```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    (ECF)
- - - - - - - - - - - - - - - - - -:
JACLINN PULLMAN,                    :    12 Civ. 1924 (PAC) (JCF)
                                    :
              Plaintiff,            :         MEMORANDUM
                                    :         AND ORDER
       - against -                  :
                                    :
ALPHA MEDIA PUBLISHING, INC.        :
(formally known as)                 :
DENNIS PUBLISHING, INC.,            :
ALPHA MEDIA GROUP, INC.,            :
QUADRANGLE GROUP, LLC, STEPHEN      :
COLVIN, PETER EZERSKY,              :
and DOES 1-20,                      :
                                    :
              Defendants.           :
- - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The plaintiff, Jaclinn Pullman, proceeding pro se, brings this action against Alpha Media Publishing, Inc. and Alpha Media Group Inc. (collectively "Alpha Media") as well as other defendants, alleging common law fraud and violation of the New Jersey Consumer Fraud Act stemming from the branding and sale of timeshares in a resort in the Dominican Republic. Ms. Pullman now moves to disqualify Alpha Media's attorney, Marc Rachman, and his law firm, Davis & Gilbert LLP ("Davis & Gilbert"), for violation of Rules 3.1 and 3.3 of the New York Rules of Professional Conduct.

For the reasons set forth below, Ms. Pullman's motion is denied.

Background

    A. The Underlying Action

This dispute arises out of the failure of two resorts in the Dominican Republic, referred to by Ms. Pullman as "Maxim Cofresi" and "Maxim JD" (Complaint ("Compl."), ¶ 1), but identified by Alpha Media as "Sun Village Cofresi" and "Sun Village Juan Dolio" (the "Resorts"), respectively. (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Disqualify Marc Rachman and Davis & Gilbert LLP as Counsel for Alpha Media Publishing, Inc. and Alpha Media Group Inc. ("Def. Memo.") at 2). In 2007, Alpha Media (formerly known as Dennis Publishing), the publisher of Maxim magazine (Compl., ¶¶ 21, 23), entered into a licensing agreement with the developer of the Resorts, Elliot Management, Inc. ("EMI") and related entities, to brand the Resorts with the Maxim name. (Defs. Memo. at 2). Induced by the Maxim branding, the plaintiff purchased two timeshares in the Cofresi resort for a total price of $124,620. (Compl., ¶¶ 5-6, 138). Despite large investments, the Resorts were never completed, and EMI defaulted on its mortgages, triggering a foreclosure of the properties. (Compl., ¶¶ 16-18). Due to the foreclosure, Ms. Pullman lost her investment, and in the underlying action she seeks to recover damages. (Compl., ¶¶ 17, 229, 276, 319, 323).

B. <u>Previous Litigation</u>

The failure of the Resorts has spawned much litigation. While Ms. Pullman was not a party to any of these earlier lawsuits (Declaration of Marc J. Rachman dated June 20, 2012 ("Rachman Decl."), ¶ 4), the conduct of Mr. Rachman in three prior proceedings serves, in large part, as the basis of her motion. (Memorandum of Law in Support of Defendants' [sic] Motion to Disqualify Marc Rachman and Davis and Gilbert LLP as Counsel for Alpha Media Publishing, Inc. and Alpha Media Group Inc. ("Pl. Memo.") at 1-2).[1]  Thus, an overview of those actions is warranted.

1. <u>EMI Action</u>

In 2008, Alpha Media sued EMI in this district in a matter captioned <u>Alpha Media Group Inc. v. EMI Resorts (S.V.G.) Inc.</u>, No. 08 Civ. 7944, over the use of the Maxim name to brand the Resorts (the "EMI Action"). (Rachman Decl., ¶¶ 5-6). In that case, Alpha Media, represented by Mr. Rachman, sought to enjoin EMI from continuing to use the Maxim name in connection with the Resorts due to violations of the trademark license agreement between Alpha Media and EMI (the "EMI Trademark License"). (Rachman Decl., ¶¶ 5-7). As part of its defense, EMI brought a motion to dismiss or alternatively for summary judgment, asserting that the EMI

---

[1] Ms. Pullman incorrectly titles her memorandum as if it were offered in support of a motion by the defendants.

Trademark License was subject to the New York State Franchise Act (the "Franchise Act"), which would have allowed EMI to continue to use the Maxim mark. (Rachman Decl., ¶ 8). For its part, Alpha Media claimed the EMI Trademark License qualified for an exemption to the Franchise Act. (Rachman Decl., ¶ 8). The case was presided over by the Honorable Shira A. Scheindlin, U.S.D.J., who denied EMI's motions, and held that the EMI Trademark License did indeed qualify for an exemption. (Rachman Decl., ¶¶ 5, 12; Pl. Memo. at 9). Eventually, the case was voluntarily dismissed, and EMI agreed to refrain from further use of the Maxim marks. (Rachman Decl., ¶ 12).

Ms. Pullman makes a series of allegations in connection with the EMI Action. Among them are claims that Mr. Rachman made misrepresentations to Judge Scheindlin, suppressed critical documents, and submitted false declarations. (Pl. Memo. at 1). In particular, Ms. Pullman alleges that three declarations filed in the EMI Action, those of Alpha Media executives Barry Pincus and Mark Barak, and that of Stephen Colvin, a defendant here, lack proper affirmations and contain false statements upon which Judge Scheindlin relied when she denied EMI's Motion to Dismiss. (Pl. Memo. at 5-7, 18). Ms. Pullman also claims that Mr. Rachman concealed the ownership structure of the Resorts, further coloring Judge Scheindlin's ruling regarding the applicability of the

Franchise Act.  (Pl. Memo. at 10; Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion to Disqualify Marc Rachman and the Davis and Gilbert Firm as Counsel for Alpha Media Defendants ("Pl. Reply") at 8).  Essentially, Ms. Pullman claims that Judge Scheindlin's ruling was incorrect, and that Mr. Rachman's alleged misrepresentations were responsible for the error.

Additionally, she alleges that the EMI Action was a "collusive" one and that the purported misrepresentations were made with the goal of "placing misinformation in the public realm in order to 'prove' that Maxim was a mere 'passive licensor' of the Maxim brand and not an active participant in the fraud."  (Pl. Memo. at 1, 3, 11-14).  Ms. Pullman contends that this misinformation thwarts subsequent lawsuits against Alpha Media, including the present action.  (Pl. Reply at 3, 7).

Defendants counsel summarily deny Ms. Pullman's allegations and point out that the court in the EMI action found them responsible for no wrongdoing.  (Def. Memo. at 4).

    2.  Jamili Action

Also in 2008, a plaintiff named Fely Jamili sued Alpha Media in the Superior Court of the State of California in connection to a timeshare interest she had purchased in one of the Resorts (the "Jamili Action").  (Def. Memo. at 4; Rachman Decl., ¶ 9).  Ms. Pullman was not a party to the Jamili Action, but she did submit a

5

declaration on behalf of the plaintiff. (Def. Memo. at 4). With respect to the Jamili Action, Ms. Pullman alleges that Mr. Rachman submitted a declaration by David Simcox, Alpha Media's General Counsel and Secretary, that contains statements contrary to statements in various declarations submitted in the EMI Action. (Pl. Memo. at 14). Counsel for the defendants also deny any wrongdoing during the Jamili Action. (Rachman Decl., ¶ 10).

### 3. Trademark Application

On May 13, 2008, Mary Luria, a partner at Davis & Gilbert, submitted a filing with United States Patent and Trademark Office ("USPTO") on behalf of Alpha Media to register the mark "Maxim Hotel and Resort" (the "the Trademark Application"). (Rachman Decl., ¶ 9 & Exh. 1). The filing has since been abandoned. (Rachman Decl., ¶ 11). Ms. Pullman contends that Alpha Media was, in fact, contractually obligated to register this mark, an obligation which Mr. Rachman allegedly concealed from Judge Scheindlin. (Pl. Memo. at 14). She further alleges that Alpha Media intentionally did not fulfill this obligation in order to allow Derek Elliot, the head of EMI, to register the mark. (Pl. Memo. at 14). Mr. Elliot's registration of the mark could then serve as basis for the trademark infringement claims that Alpha Media filed against EMI in the (allegedly collusive) EMI Action. (Pl. Memo. at 14; Pl. Reply at 9). Counsel for the defendants deny

any wrongdoing with respect to the Trademark Application. (Rachman Decl., ¶ 10).

On these facts Ms. Pullman seeks to disqualify Mr. Rachman and Davis & Gilbert, and asks the Court to refer the matter to the New York Bar for disciplinary action and to the New York Attorney General's office for criminal investigation. (Pl. Memo. at 24).

Discussion

1. Legal Standards

    A. Pro Se Motions

The papers of a pro se litigant should be liberally construed and should be interpreted to raise the strongest arguments that they suggest. See, e.g., Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012); Pilman v. New York City Housing Authority, 214 F. Supp. 2d 325, 327 (S.D.N.Y. 2002); see also; Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding pro se pleadings to less stringent standard than those drafted by attorneys); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

    B. General Principles: Disqualification

When considering a motion to disqualify opposing counsel, a court "must balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) (quoting Hempstead

Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005)) (internal quotation marks omitted).  However, "motions to disqualify counsel are disfavored and subject to a high standard of proof, in part because they can be used tactically as leverage in litigation."  Revise Clothing, 687 F. Supp. 2d at 388 (citing cases); Scantek Medical v. Sabella, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008) ("In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny.").  Such strict scrutiny stems from concerns that motions to disqualify inevitably cause delay and added expense, and interfere with a party's right to the counsel of its choice.  Mori v. Saito, 785 F. Supp. 2d 427, 432 (S.D.N.Y. 2011); Finkel v. Frattarelli Brothers, Inc., 740 F. Supp. 2d 368, 372 (E.D.N.Y. 2010); Revise Clothing, 687 F. Supp. 2d at 388; Scantek Medical, 693 F. Supp. 2d at 238; Ello v. Singh, No. 05 Civ. 9625, 2006 WL 2270871, at *2 (S.D.N.Y. Aug. 7, 2006) (citing cases).

"[T]he authority to disqualify an attorney is a function of the court's inherent supervisory power."  Revise Clothing, Inc., 687 F. Supp. 2d at 387.  When deciding motions to disqualify, courts look to state disciplinary rules, including, in this forum, the New York Rules of Professional Conduct, Amusement Industry, Inc. v. Stern, 657 F. Supp. 2d 458, 460 (S.D.N.Y. 2009), but such

rules merely provide guidance and need not be rigidly applied. Mori, 785 F. Supp. 2d at 432 (S.D.N.Y. 2011); see also Hempstead Video, 409 F.3d at 132; Merck Eprova AG v. ProThera, Inc., 670 F. Supp. 2d 201, 207-08 (S.D.N.Y. 2009). While disqualification is proper "where necessary to preserve the integrity of the adversary process," Board of Education of the City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979), "not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, 409 F.3d at 132. Furthermore, the "'[m]ere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion. Rather, the motion will be granted only if the facts present a real risk that the trial will be tainted.'" Revise Clothing, 687 F. Supp. 2d at 387 (alteration in original) (quoting United States Football League v. National Football League, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985)).

Indeed, the only two readily identifiable situations where the risk of taint stemming from an attorney's conduct merits disqualification are "'when the challenged attorney is concurrently representing adverse interests . . . or when the attorney's successive representation of adverse interests raises the possibility that in the present matter he will improperly use confidences gained in the prior representation to the detriment of his former client.'" Bangkok Crafts Corp. v. Capitolo di San

Pietro in Vaticano, 376 F. Supp. 2d 426, 428 (S.D.N.Y. 2005) (citations omitted) (quoting United States Football League, 605 F. Supp. at 1452); accord NXIVM Corp. v. O'Hara, 05 Civ. 1546, 2012 WL 2375212, at *3 (N.D.N.Y. June 22, 2012). Even then, "[d]isqualification is an extreme remedy that 'courts should be quite hesitant' to order unless conduct by counsel will likely 'taint the underlying trial.'" Morin v. Trupin, 728 F. Supp. 952, 957 (S.D.N.Y. 1989) (emphasis added) (quoting Nyquist, 590 F.2d at 1246).

Accordingly, disqualification is proper "'only upon a finding that the presence of a particular counsel will taint the trial by affecting his or her presentation of a case.'" European Community v. RJR Nabisco, Inc., 134 F. Supp. 2d 297, 300 (E.D.N.Y. 2001) (quoting Bottaro v. Hatton Associates., 680 F.2d 895, 896 (2d Cir. 1982)). Otherwise, the remedy for attorney misconduct is the "disciplinary machinery of the state and federal bar." Bottaro, 680 F.2d at 896. These institutions are better suited to police the "often poorly demarcated boundary between ethically acceptable behavior and proscribed misdeeds." European Community, 134 F. Supp. 2d at 304.

### C. New York Rules of Professional Conduct

Rule 3.1 of the New York Rules of Professional Conduct forbids attorneys from engaging in "frivolous" conduct. N.Y. Comp. Codes

R. & Regs. tit. 22, § 1200.0, rule 3.1. For the purposes of the rule, frivolous conduct includes circumstances where "the lawyer knowingly advances a claim or defense that is unwarranted under existing law" or "the lawyer knowingly asserts material factual statements that are false." Id.

Rule 3.3 is intended to protect against attorneys deceiving courts; it reads, in relevant part:

> (a) A lawyer shall not knowingly:
>
> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
>
> (2) fail to disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
>
> (3) offer or use evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, rule 3.3. However, while these rules forbid ceratin actions by attorneys, they are usually used in the context of disciplinary proceedings, not as the basis for a disqualification motion. See, e.g., In re Chiofalo, 78 A.D.3d 9, 11, 909 N.Y.S.2d 36, 37 (2010) (imposing discipline for

11

violation of ethics rules).

    2. Applicability to Alpha Media's Counsel

        A. Mr. Rachman

Here, the plaintiff's motion must fail for several reasons. First, there is no evidence that Mr. Rachman has any conflict of interest that would warrant his disqualification. In each of the earlier matters Ms. Pullman cites in her memoranda, Mr. Rachman and his law firm represented only Alpha Media, their clients here. (Rachman Decl. ¶¶ 5, 9). Ms. Pullman makes no allegations that Mr. Rachman ever represented her own interests. Her only previous encounter with Mr. Rachman occurred in connection with the Jamili Action, where Mr. Rachman represented the defendants and Ms. Pullman submitted a declaration on behalf of the plaintiff. (Rachman Decl., ¶ 9; Def. Memo. at 4). Mr. Rachman is neither representing adverse interests, nor is there a risk that he has gained confidences from any prior representation that might prejudice Ms. Pullman. The circumstances here thus fall into neither of the categories that merit disqualification. See Bangkok Crafts, 376 F. Supp. 2d at 428. Furthermore, disqualification is a remedy principally intended to guard against potential conflicts of interest, and Mr. Rachman's continued representation of Alpha Media presents no such conflict.

Next, the plaintiff's attempt to leverage alleged violations

of Rules 3.1 and 3.3 in prior actions to disqualify Mr. Rachman from the present action is misguided. Ms. Pullman fails to demonstrate how the alleged document suppression or nonconforming affirmations and "untrue statement[s]" contained in the declarations from the EMI Action affect the integrity of the adversarial process in this matter. (Pl. Memo. at 1, 5, 18). In short, she fails to establish a nexus between Mr. Rachman's alleged misconduct and the matter presently before the Court. Furthermore, the plaintiff does not cite -- and the Court has not found -- any case where an attorney has been disqualified from a particular action because of a violation of Rules 3.1 or 3.3 in a previous one. (Pl. Reply at 7). The proper forum to address violations of the Rules of Professional Conduct is a federal or state bar disciplinary proceeding.

Finally, while Ms. Pullman insists that her motion is not a litigation tactic (Pl. Memo. at 2), she uses her disqualification motion as an opportunity to ask this Court to reexamine Judge Scheindlin's earlier determinations. (Pl. Reply at 3-4). Ms. Pullman appears to be concerned that Judge Scheindlin's order will be harmful to her case. However, this concern is irrelevant to her motion to disqualify Mr. Rachman, and is properly addressed if and when the defendants rely on Judge Scheindlin's determinations as having some preclusive effect here.

13

B.  Davis & Gilbert

Ms. Pullman similarly fails to establish a basis for the disqualification of Davis & Gilbert. Her request is based on the nebulous "actions" of Mr. Rachman's co-counsel in prior actions and on unspecified misrepresentations Ms. Luria allegedly made to the USPTO. (Pl. Memo. at 22). To support her position, Ms. Pullman cites a Third Circuit case, Kramer v. Scientific Control Corp., 534 F.2d 1085, 1091-92 (3d Cir. 1976), where an attorney appointed his law partner to represent a class of plaintiffs of which he was a member, causing a potential conflict of interest. Yet Ms. Pullman's papers do not suggest that any attorney at Davis & Gilbert has any conflict that would taint the proceedings in this case. Kramer is therefore inapposite.

In sum, Ms. Pullman fails to meet the high burden required to disqualify either Mr. Rachman in particular, or Davis & Gilbert generally.

2.  Disciplinary Action

Because the plaintiff has failed to establish any misconduct on the part of Mr. Rachman or Davis & Gilbert in this case, I decline to refer this matter to the Attorney General for criminal investigation, or to the New York Bar for disciplinary proceedings.

Conclusion

For the reasons set forth above, the plaintiff's motion to

disqualify Marc Rachman and Davis and Gilbert, LLP as Counsel for Alpha Media Publishing, Inc. and Alpha Media Group, Inc. (Docket no. 19) is denied in all respects.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       July 31, 2012

Jaclinn Pullman
140 Woodland Street
Tenafly, NJ 07670

Marc J. Rachman, Esq.
Holly Melton, Esq.
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Joshua H. Epstein, Esq.
Michael Roth, Esq.
SorinRand LLP
515 Madison Ave., 13th Floor
New York, NY 10022

Dennis E. Glazer, Esq.
Andrew Ditchfield, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017