UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACLINN PULLMAN,

          Plaintiff,

          v.

ALPHA MEDIA PUBLISHING, INC. et al.,

          Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 28, 2013

12.Civ. 1924 (PAC) (SN)

**ORDER ADOPTING REPORT AND RECOMMENDATION**

HONORABLE PAUL A. CROTTY, United States District Judge:

## BACKGROUND

On December 21, 2011, pro se Plaintiff Jaclinn Pullman initiated this action alleging common law fraud, violations of the New Jersey Consumer Fraud Act ("NJCFA"), piercing the corporate veil and punitive damages.[1] Pullman complains that Defendants deceived her into investing in a timeshare called Maxim Bungalows by misrepresenting that Maxim owned the Bungalows, when in fact, Maxim was nothing but a "passive trademark licensor." Pullman asserts claims against (1) Alpha Media Group Inc., a multimedia company and its subsidiary Alpha Media Publishing, Inc., a magazine publishing company formerly known as Dennis Publishing, Inc., the publishers of Maxim Magazine (collectively, "Alpha Media") (2) Quadrangle Group, LLC ("Quadrangle") a private investment management and advisory firm that was in the process of acquiring Dennis Publishing around the time of the purported fraud; (3) Peter Ezersky, a managing partner at Quadrangle Group, LLC, and (4) Stephen Colvin, the former Chief Executive Officer of Dennis Publishing.

---

[1] This action was commenced in the Superior Court of the State of New Jersey. Defendants Quadrangle Group LLC ("Quadrangle") and Peter Ezersky removed this case to the District of New Jersey on February 14, 2012, and Plaintiff transferred venue to the Southern District of New York on March 15, 2012.

1

A.  **The Facts**[2]

On June 22, 2007, Pullman began her weeklong stay at the Sun Village Resort and Spa in the Dominican Republic.  While there, Pullman was solicited to invest in the Maxim Bungalow projects in Cofresi and Juan Dolio in the Dominican Republic.  Pullman contends that she was deceived into believing that Maxim owned the Bungalows.  For example, an unidentified person told her that Maxim made a large investment.  Further, at an informational meeting, Pullman saw a promotional video entitled "Right Time, Right Place," which she contends suggested that Maxim and the Elliot Company partnered in owning the Bungalows.  She also viewed a three-hundred-page-plus promotional book (the "Maxim Draft Book").  These materials neglected to disclose that Maxim did not own any part of the Bungalows and had merely licensed its trademark to be used in promoting the Bungalows.  The materials also failed to disclose that Maxim could terminate its license in the event that the project was not completed by June 30, 2007.  The Bungalows were scheduled to open in September and October 2007.

Pullman also spoke with Roger Walser, who represented himself as a Sun Village employee and her "Maxim Bungalows sales representative."  Walser, too, indicated that Maxim owned the Bungalows.  Lastly, Pullman spoke with an unnamed agent of Ocean Palms Real Estate.  This representative informed Pullman that Ocean Palms was a "joint Maxim-Elliot Company" that owned the Maxim Bungalows.  Based on these representations, Pullman agreed to a purchase price of $124,620, signed purchase documents, and made a $5000 deposit.  When Pullman returned home to New Jersey, she continued to research the Bungalows.  She visited Maxim's website, which linked her to Maxim Bungalows's web pages.  Finding no information dispelling her belief about Maxim's ownership, Pullman sent a check for $119,620 to the sales office at the Sun Village at the Dominican Republic for the balance of the purchase price.

---

[2] The facts are taken from the R&R unless otherwise noted.

In the fall of 2009, creditors foreclosed on the Bungalows. It was then that Pullman discovered that the Bungalows were the subject of a purported Ponzi scheme and that Maxim did not own the Bungalows. Pullman alleges that had she known of Maxim's limited involvement, she would not have invested in the project.

**B. Magistrate Judge Netburn's R&R**

Magistrate Judge Netburn recommended that Alpha Media and Quadrangle's motions to dismiss Plaintiff's common law fraud and NJCFA claims sound be denied, but recommended granting their motions to dismiss Plaintiff's claims for piercing the corporate veil and punitive damages. She further recommended that the motions to dismiss by Colvin and Ezersky should be granted in their entirety. Finally, she recommended that the Defendants' motions to dismiss for failure to join an indispensible party should be denied. Pullman, Alpha Media, and Quadrangle, submitted timely objections. The Court has reviewed the contested issues de novo and those portions of the Report and Recommendation ("R&R") to which there were no objections for clear error. Upon review, the Court adopts Magistrate Judge Netburn's R&R in its entirety.

    **a. Common Law Fraud**

In New Jersey, the five elements of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997).

With respect to Alpha Media, Magistrate Judge Netburn found that Pullman plausibly alleged that the purported misrepresentations about Maxim's ownership of the Maxim Bungalows could be attributed to Alpha Media and that Pullman reasonably relied on those statements. (R&R at

12-16, 18-26.) Magistrate Judge Netburn also found that as against Quadrangle, Pullman adequately pled Quadrangle's control over Maxim at the relevant time. (Id. at 30-33.) Alternatively, Pullman pled a sufficient basis to hold Quadrangle liable for Alpha Media's fraud under either an agency theory of liability or by piercing the corporate veil. (Id. at 33-36.)

With respect to Colvin and Ezersky, however, Magistrate Judge Netburn found that Pullman failed to adequately plead, with particularity, that these individuals made any misrepresentations on which Pullman relied, or that Colvin had the requisite scienter. (R&R at 37-41, 42-43.) While recommending the denial of Defendants' motions to dismiss Plaintiff's common law fraud claim against Alpha Media and Quadrangle, Magistrate Judge Netburn recommended that Colvin and Ezersky's motions to dismiss be granted.

### b. New Jersey Consumer Fraud Act ("NJCFA")

"To state a cause of action under the [New Jersey] Consumer Fraud Act, a plaintiff must allege: (1) an unlawful practice by the defendant; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements - defendant's allegedly unlawful behavior and the plaintiff's ascertainable loss." Szymczak v. Nissan N. Am., Inc., 2011 U.S. Dist. LEXIS 153011, at *46 (S.D.N.Y. 2011) (citing Parker v. Howmedica Osteonics Corp., 2008 U.S. Dist. LEXIS 2570, at *6 (D.N.J. 2008)). To adequately state a claim under the NJCFA, a plaintiff must plead allegations with particularity pursuant to Fed. R. Civ. P. Rule 9(b). Dimitrakis v. Citibank, 2013 U.S. Dist. LEXIS 16652, at *4 (D.N.J. 2013).

Finding the requisite connections to New Jersey to apply the NJCFA, Magistrate Judge Netburn found that Pullman adequately pled that the material misrepresentations attributed to Alpha Media constituted an "unlawful practice" that caused Pullman's loss. (R&R at 45-50.) As pleaded, Pullman plausibly tied Quadrangle's direct participation to the scheme and adequately

pled a basis for alternate liability. (Id. at 51.) But, Pullman failed to provide nonconclusory support for her allegations that Colvin and Ezersky personally misled Pullman. (Id. 52-54.) As with the common law fraud claim, Magistrate Judge Netburn recommended that Plaintiff's NJCFA claim against Alpha Media and Quadrangle be sustained, but recommended that Colvin and Ezersky's motions to dismiss be granted.

### c. Piercing the Corporate Veil and Punitive Damages

Magistrate Judge Netburn found that "piercing the corporate veil" and "punitive damages" did not constitute cognizable free-standing claims. For that reason, she recommended dismissal of Pullman's claims against all Defendants. (R&R at 54 (citing Pulaski Constr. Co., Inc. v. Air Frame Hangars, Inc., 950 A.2d 868, 878 (N.J. 2008); Hassoun v. Cimmino, 126 F. Supp. 2d 353, 372 (D.N.J. 2000).)

### d. Failure to Join an Indispensible Party

Under Fed. R. Civ. P. Rule 12(b)(7), an action may be dismissed for failure to join an indispensible party. Fed. R. Civ. P. Rule 19(a)(1) defines "required party" as one whom:

(A) In that person's absence, the court cannot accord complete relief among existing parties; or
(B) That person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Magistrate Judge Netburn concluded that the Elliots and Impact entities were not required parties under Rule 19(a) because these entities do not claim for themselves an interest in the subject of the suit and Defendants failed to show that any party would be exposed to inconsistent obligations. (R&R at 55-56.) Accordingly, Magistrate Judge Netburn recommended that the action not be dismissed for failure to join these entities.

## DISCUSSION

### A. Standard of Review

In reviewing a report and recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where a party makes a timely "specific written objection," the district court is obligated to review the contested issues *de novo*. Greene v. WCI Holdings Corp., 956 F. Supp 509, 513 (S.D.N.Y. 1997). "The district court may adopt those portions of the report to which no timely objection has been made, so long as there is on the face of the record." Feehan v. Feehan, No. 09 Civ. 7016, 2011 U.S. Dist. LEXIS 14045, 2011 WL 497776 at *1 (S.D.N.Y. Feb. 10, 2011).

Federal Rule of Civil Procedure 12(b)(6) requires the court to accept the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). A court need not accept as true, however, "[l]egal conclusions, deductions or opinions couched as factual allegations." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1960, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "It is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir.

2001) (citation and internal quotation marks omitted) (emphasis in original).

**B. Plaintiff's Objections to Magistrate Judge Netburn's R&R**

Pullman's objections focus on Magistrate Judge Netburn's recommendation that the Court dismiss her NJCFA claim against Colvin. She does not specifically contest the recommendation that her common law fraud claim against Colvin be dismissed, other than to say that it should not be dismissed with prejudice. (Objection at 1, ¶¶ 2, 3; 3-29.) As for Ezersky, she does not object to the recommendation of dismissal as to either the NJCFA or the common law fraud claims, but objects they should not be dismissed with prejudice. (Id. at 1 ¶ 4; 29-30.)

  a. Colvin's Liability Under the NJCFA

Pullman objects to Magistrate Judge Netburn's recommendation that the Court dismiss her NJCFA claim against Colvin. (ECF No. 68, Objection at 1.) Pullman asserts that she has demonstrated Colvin's personal liability, as well as his tort participation liability arising from his alleged participation as a corporate officer in Alpha Media's tortious conduct.

Pullman alleges that Colvin executed the Maxim Bungalows Licensing Agreement, spoke at a press conference and training events, was quoted in Maxim Bungalows press articles, gave interviews, and made appearances in which he claimed to be "very excited to be in partnership with them [the Elliots] to develop the Maxim Bungalows." (Objection ¶¶ 40-47; P. Colvin Opp. at 23.) As set forth in Magistrate Judge Netburn's R&R, Pullman failed to allege that Colvin personally misrepresented Maxim Bungalow's ownership or that she relied on Colvin's statements. The statements of Walser, the Ocean Palms real estate agent, and the Maxim website arguably misrepresented Maxim's ownership, but Pullman does not connect them to Colvin. Pullman also contends that she relied on various misleading marketing and advertising materials, but does not claim that they misstate Maxim's ownership or that Colvin created those materials.

(See Objection ¶¶ 14, 17.)

As for the statements that Colvin did make, his indications of "excitement" were not alleged to be false.  (Objection ¶ 44.)  See Gennari v. Weichert Co. Realtors, 148 N.J. 582, 607 (N.J. 1997) (noting that a misrepresentation must be "found to be false.").  While Pullman contends that Colvin's references to a "partnership" with the Elliot Group were misleading, standing alone, they were not because Dennis Publishing and the EMI Resorts (S.V.G.) Inc. did in fact share a relationship through licensing.  (Objection ¶¶ 62, 64; Compl. ¶¶ 290, 291).  More problematically, however, Pullman does not allege that she knew about any statements made by Colvin at the time of her purchase, and so they could not have caused her loss.  Szymczak v. Nissan N. Am., Inc., 2011 U.S. Dist. LEXIS 153011, at *46 (S.D.N.Y. 2011) (requiring a causal nexus to sustain an NJCFA claim).

Further, Pullman's objection identifies facts that she contends should have been disclosed, but there is no allegation that Colvin had a disclosure obligation arising from a fiduciary or special relationship or prior disclosure.  Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 297 (D.N.J. 2009); Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, L.L.C., 655 F. Supp. 2d 473, 512 (D.N.J. 2009).  The cases that Pullman cites do not support a duty to disclose outside some sort of relationship between the parties.  (Objection ¶ 23.)  Absent misstatements by Colvin or a duty to disclose, what Colvin knew is not independently actionable.  Thus Pullman has failed to plead individual liability based on an unlawful practice.[3]

Pullman's tort participation theory fails as well because she has also not shown that by his own conduct, Colvin breached any duty that Alpha Media could have owed to her.  See Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 272 (N.J. 2002) (requiring corporate officer's

---

[3] Plaintiff's allegations of an "unconscionable business practice" fail for the same reason.  (Objection ¶ 15.)  See Kugler v. Romain, 58 N.J. 522, 544 (N.J. 1971) ("[U]nconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like.").

"sufficient[ ] involve[ment]" in the corporation's tortuous conduct to establish tort participation liability). Pullman's renewed objections may establish Colvin's involvement in promoting the Maxim Bungalows project, executing the licensing agreement, and Quadrangle's purchase of Dennis Publishing, but not in misrepresentations about its ownership.

      b. Leave to Amend

Pullman objects to Magistrate Judge Netburn's recommendation that Colvin and Ezersky's motions to dismiss be granted in their entirety. (Objection ¶¶ 120, 127; R&R at 58.) That is, she requests that she be given the opportunity to amend her allegations against both Colvin and Ezersky. (Id. ¶¶ 118, 125.)

"A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Read liberally, Plaintiff's lengthy complaint gives no indication that she can cure the reported deficiencies. Piercing the corporate veil and punitive damages are not independent, cognizable causes of action. With respect to Ezersky, notably, Pullman's objection does not challenge the legal basis for recommending dismissal. Her objection identifies no new factual material that she would replead to suggest that Ezersky made the requisite misstatements or was otherwise involved in the "unlawful practices upon which she relied." (R&R at 42-43, 53-54.) Pullman has similarly failed to show that an opportunity to replead would cure the Complaint's defects to state a claim against Colvin. While Pullman contends that she has uncovered "additional facts" since her initial filing, such as the registration of the Maxim Bungalows trademark in Turks and Caicos, these facts do not connect Colvin to any misrepresentations. (Objection ¶ 116.)

**C. Defendants' Objections to Magistrate Judge Netburn's R&R**

 a. <u>Quadrangle's Objections</u>

As an initial matter, Quadrangle objects to Magistrate Judge Netburn's consideration of the exhibits that Pullman attached to her opposition to the motions to dismiss. Quadrangle acknowledges the deference given to pro se litigants, but argues that it is not appropriate to do so when Defendants have already answered the complaint. (Objection at 8.) The argument is rejected and the Court finds that it was appropriate to consider the attached exhibits.

On the merits, Quadrangle objects that there was an insufficient basis to find that it directly participated in the fraud by controlling or directing Dennis Publishing at the time of the alleged misrepresentations. (Objection at 1.) Specifically, Quadrangle contends that "Plaintiff's papers only establish that Quadrangle contemplated the acquisition and began the acquisition process prior to her purchase of the timeshare interests," steps which do not amount to control. (<u>Id.</u> at 1-2.) Defendants have not shown, however, that an acquisition must be completed as a prerequisite to exercising control over a corporate entity or to directing that entity to perpetrate a fraud. It is plausible for an entity with a demonstrated interest in acquiring another to assert some control throughout the merger process or earlier, especially where Pullman alleges that Quadrangle's acquisition was multi-staged and began before her purchase.

Quadrangle argues that the exhibits on which the Plaintiff relies and her allegations in her Complaint and opposition do not suggest control prior to Pullman's purchase of the timeshares in late June/early July 2007. For example, Quadrangle contends that the exhibit supporting the transfer of certain Maxim marks in November 2006 contains only an ambiguous reference that does not connect any transfer to Quadrangle (Objection at 8-9; Pl. Opp. Ex. F); a letter written by Dennis Publishing's attorney referring to a change in ownership fails to specify that the change

occurred prior to late 2006 (Objection at 9); Colvin's bio on the Daily Beast website stating that he had "implemented the sale" of Dennis Publishing a "few months" after the May 29, 2007 Bungalows project announcement, which would have implausibly permitted only a three-week window for the acquisition prior to Pullman's purchase on June 22, 2007 (Objection at 10); and that Alpha Media Group Inc.'s certificate of incorporation indicating that it was formed on June 13, 2007 says nothing about Quadrangle's control (id.). While these arguments may be persuasive to a fact finder concerning Quadrangle's control, at the motion to dismiss stage, the court does not "assay the weight of the evidence . . . ." Lopez v. Jet Blue Airways, 662 F.3d 593, 596 (2d Cir. 2011) (internal quotation marks omitted). It only "assess[es] the legal feasibility of the complaint." Id. As Magistrate Judge Netburn noted, opposing inferences can be made (R&R at 31), but it does not follow that Plaintiff's allegations are "pure conjecture." (Objection at 11.) The evidence presented, which Quadrangle concedes supports a contemplated closing in the third quarter of 2007, is not inconsistent with a multi-staged acquisition process that plausibly overlapped with Pullman's purchase. (See Pl. Opp. Ex. G.)

Plaintiff has alleged that Quadrangle purchased assets that were used to "market and promote the sales of Maxim Bungalows." (R&R at 32 (citing P. Opp. at 1).) Plaintiff's well-pled factual allegations must be accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Under this standard, Plaintiff has plausibly established Quadrangle's control, sufficient to survive dismissal of Pullman's common law fraud and New Jersey Consumer Fraud Act claims.

Quadrangle also contends that there is no basis for piercing the corporate veil or holding Quadrangle liable as a principal under agency law. (Objection at 13.)[4] "In order to state a claim

---

[4] This is a different argument than Pullman's free-standing, independent piercing the corporate veil claims, which the Court dismisses. (See R&R at 54.) Here, Pullman is asserting veil-piercing as a means of holding Quadrangle

11

for piercing the corporate veil under New Jersey law, a plaintiff must show that: (1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002).

The Court has considered the Complaint, Plaintiff's opposition papers and Quadangle's objection, and concludes that Pullman has made the requisite allegations to support piercing of the corporate veil. Pullman's allegation that Quadrangle and Alpha Media functioned as one entity under Quadangle's control is not conclusory. (R&R at 34 (citing P. Opp. 10-11).) Pullman alleges that Quadrangle representatives signed documents on behalf of Alpha Media Group Inc., the two entities shared addresses and principals and otherwise failed to maintain corporate formalities. (P. Opp. 10-11.) Quadrangle's time-frame based objections do not support dismissal (Objection at 15)—a liberal construction of Pullman's factual allegations supports an inference of Quadrangle's earlier dominance at the time of Pullman's purchase. Pullman has similarly pled a sufficient agency relationship.

  b. Alpha Media's Objections

Alpha Media seeks dismissal of the common law fraud and NJCFA claims "to the extent such causes of action are premised on allegations of fraud by omission" because Pullman disclaimed fraud by omission as a theory of liability in her opposition papers. (Objection at 1.) The Court declines to do so and will permit Pullman to proceed with both theories. As Magistrate Judge Netburn noted in the R&R, Pullman is alleging a theory of misrepresentation. (R&R at 17-18.) Magistrate Judge Netburn also recognized, however, that the Complaint alleges both omissions as well as affirmative misrepresentations. (Id. at 9 (citing Compl. ¶¶ 149-229).)

---

liable for the actions of Alpha Media on her underlying fraud claims. (See R&R at 33.)

Pullman has always maintained that Alpha Media had a duty to disclose arising from prior misleading representations that could be attributed to it. (See Compl. ¶ 162; Pl. Alpha Media Opp. at 6-7.)

Alpha Media also requests the omission-based factual allegations to be stricken from the Complaint and Plaintiff's opposition. (Objection at 1, 7-8.) Under Fed. R. Civ. P. Rule 12(f), there is a "strong presumption against striking portions of pleadings . . . .'" Dunn v. Albany Med. College, 2010 U.S. Dist. LEXIS 55314, at *20 (N.D.N.Y. 2010) (citation omitted). "A motion to strike on grounds of impertinence and immateriality should be denied unless 'it can be shown that no evidence in support of the allegation would be admissible.'" In re Merrill Lynch & Co. Research Reports Sec. Litig., 2003 U.S. Dist. LEXIS 18717, at *7 (S.D.N.Y. 2003). Alpha Media has made no such showing. Pullman's allegations touching on concealment provide background and could be relevant to her misrepresentations claims. Alpha Media has failed to identify any authority that supports striking the Complaint and Pullman's opposition papers. Accordingly, the Court declines to do so.

Alpha Media incorrectly claims that Magistrate Judge Netburn made factual findings and conclusions of law with regard to Defendants' liability. (Objection at 8-9.) At no point did Magistrate Judge Netburn suggest that Plaintiff's factual allegations were true. (R&R at 18 ("[T]he Court need not decide the truth of these allegations."); id. at 23 "This is a factual dispute with arguments on both sides.").) The R&R indicated that "reliance was reasonable," but the procedural posture and a fair reading of the R&R make clear that Magistrate Judge Netburn determined that Pullman provided sufficient facts to plausibly allege that reliance was reasonable. Alpha Media also complains that the R&R quotes authority referring to "one who engages in fraud . . . ," presumably because it suggests that Alpha Media engaged in fraud.

13

(R&R at 24 (citing Jewish Ctr. of Sussex Cnty. v. Whale, 432 A.2d 521, 524 n.1 (N.J. 1981).) The citation is a correct statement of the law; the objection is without merit.

Finally, Alpha Media objects to the R&R's finding that the misrepresentations on which Pullman relied could be attributed to Alpha Media. The Court agrees with Magistrate Judge Netburn's recommendation, as a matter of pleading, that the "indicia of authority that originated from Maxim," including its webpage, coupled with the representations of Walser and the Ocean Palms realtor, are sufficient to create the requisite agency connection between Alpha Media and the alleged misrepresentations to survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court accepts and adopts Magistrate Judge Netburn's January 11, 2013 Report and Recommendation in its entirety. Accordingly, Alpha Media and Quadrangle's motions to dismiss are DENIED as to the common law fraud and NJCFA claims. Neither party has filed objections to Magistrate Judge Netburn's recommendation that the Court not dismiss the action pursuant to Fed. R. Civ. P. Rule 12(b)(7) for failure to join an indispensible party. Upon review for clear error, the Court declines to do so. The Court GRANTS Colvin and Ezersky's motions to dismiss those claims. Finally, defendants' motions to dismiss the piercing the corporate veil and punitive damages claims are GRANTED. The reference to Magistrate Judge Netburn continues for further disposition of this matter.

Dated: New York, New York
       March 2⁄2013

SO ORDERED

*/signature/*

PAUL A. CROTTY
United States District Judge

Copies mailed to:

Jaclinn Pullman
140 Woodland St.
Tenafly, NJ 07670