UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JACLINN PULLMAN,

                         Plaintiff,

     -against-

ALPHA MEDIA PUBLISHING, INC., et al.,

                      Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 10, 2014

12 Civ. 1924 (PAC) (SN)

**ORDER ADOPTING REPORT AND RECOMMENDATION**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Jaclinn Pullman brings this action against defendants Alpha Media Group Inc. and Alpha Media Publishing Inc. (collectively, "Alpha Media"), formerly known as Dennis Publishing Inc., Quadrangle Group ("Quadrangle"), Stephen Colvin, the former CEO of Dennis Publishing Inc., and Peter Ezersky, a former managing principal of Quadrangle, alleging common law fraud and violations of the New Jersey Consumer Fraud Act ("NJCFA"). She sought to pierce the corporate veil and to recover punitive damages. On March 28, 2013, this Court declined to pierce the corporate veil and dismissed the punitive damages claims against defendants Quadrangle and Alpha Media, and dismissed all claims against defendants Stephen Colvin and Peter Ezersky. (Dkt. No. 80.) On September 10, 2013, the parties orally agreed to a settlement in open court before Magistrate Judge Sarah Netburn. The parties cross-moved for enforcement of the oral settlement agreement. (Dkt. No. 153 & 179.) While each party interprets the terms of the oral settlement differently, Pullman maintains that the terms of agreement as stated in court are self-explanatory, so that the transcript of the settlement conference should be enforced verbatim without any subsequent written memorialization.

1

On March 14, 2014, Magistrate Judge Netburn issued a Report & Recommendation ("R&R") that the Court grant in part and deny in part the parties' respective motions, and she attached a proposed written settlement agreement. (Dkt. No. 208.) Magistrate Judge Netburn found that the parties' oral settlement agreement was enforceable. Interpreting the specific settlement terms, she found that: (1) the parties' mutual release included former employees of Quadrangle and Alpha Media, including Stephen Colvin in his official (but not his individual) capacity; (2) the mutual release was a specific release for all claims that were brought or could have been brought in connection with the action; and (3) the confidentiality agreement applied to both parties, and was limited to the settlement amount.

Both parties filed timely objections to the R&R. (Dkt. Nos. 214 & 216.) Plaintiff weighed in with 35 pages of objections in her initial brief and reply. She objects that the R&R "made numerous factual errors and improper legal conclusions," (Pl.'s Objections at 2), and that the "terms [of Judge Netburn's Proposed Settlement Order] contain material changes to the settlement terms as they were recited on the record on September 10, 2013," *(see id.* at 1, 5). Plaintiff's main objections are that (1) she did not agree to release Stephen Colvin or other former employees of the corporate Defendants since, among other reasons, they did not agree to release her; (2) she did not agree to release all claims that "could have been" brought, only those that were actually brought; (3) the confidentiality clause should not be limited to the settlement amount; and (4) James Catledge and Derek Elliot should not be specifically named as excluded from the release. Plaintiff's numerous other specific objections are addressed below.

Defendants Quadrangle and Alpha Media raise a single objection that, in light of Plaintiff's actual and anticipated appeals of this Court's orders, the deadline to pay Plaintiff the settlement amount should be extended to 45 days after "(i) the date of this Order or (ii) the

2

exhaustion of any appeals that Plaintiff may file, whichever date is later." (Defs.' Objections at 1-2.)

For the reasons that follow, the Court adopts Magistrate Judge Netburn's R&R, except as to the addition of a specific exclusion for James Catledge and Derek Elliot in the proposed settlement agreement. The Court therefore grants in part and denies in part each party's motion to enforce the oral settlement agreement. The Court orders enforcement of the edited settlement agreement, attached as Exhibit A, which memorializes the terms of the parties' oral settlement agreement in open court on September 10, 2013.

## DISCUSSION[1]

### I. Legal Standard

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c). The Court "may adopt those portions of the [R&R] to which no objections have been made and which are not facially erroneous." *La Torres v. Walker*, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). When a timely objection is made to the magistrate's recommendations, the court is required to review the contested portions *de novo*. *Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). Objections must be "specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). When an objection is conclusory, general, or simply rehashes the contentions found in the original motion papers, the Court will review the R&R for clear error. *Id.*; *see Schoolfield v. Dep't of Corr.*, 1994 WL 119740, at *2 (S.D.N.Y. Apr. 6, 1994) (objections asserting that the magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon

---

[1] For the facts of this case, see Report and Recommendation, March 14, 2014, ECF No. 208.

which complaint grounded, are conclusory and do not form specific basis for not adopting report and recommendation). While courts afford *pro se* litigants some latitude in meeting these requirements, they are "not exempt from the rules of procedural [] law." *DiPilato v. 7-Elevan, Inc.*, 662 F. Supp. 2d 333, 343 (S.D.N.Y. 2009) (quotation omitted).

## II. Analysis[2]

### A. Plaintiff's Objections

As an initial matter, Plaintiff broadly objects that the Court cannot alter material terms of the parties' oral settlement agreement at the September 10 conference. (*See* Pl.'s Objections at 1, 5.) Magistrate Judge Netburn addressed this issue in her R&R, noting that the Court "ha[s] ample authority to clarify ambiguities in the description of the settlement reached [on the record] by crafting the terms at issue." *Manning v. New York University*, 299 F.3d 156, 164 (2d Cir. 2002); *see also* R&R at 26-27. Where the court finds that there is no ambiguity in the contract, "'the court must ascertain the intent of the parties from the plain meaning of the language.'" *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (quoting *Tigue v. Commercial Life Ins. Co.*, 631 N.Y.S.2d 974, 975 (4th Dep't 1995)).

Plaintiff is adamant in her papers that, unlike Defendants, she is not providing her own "version" of the settlement agreement, but rather seeking to enforce the written transcript of the settlement conference. *See, e.g.*, Pl.'s Objections at 4 ("Since Judge Netburn and the parties all agree that the September 10 oral settlement agreement is binding and enforceable as it was recited on the record then it would seem obvious that Judge Netburn would recommend the Court to enforce the oral settlement agreement as it was recorded.") In other words, Pullman

---

[2] There were no objections to the choice of law analysis in the R&R. Finding no clear error in the R&R's conclusion, the Court adopts it.

4

believes that the terms of the agreement speak for themselves. At the same time, Pullman argues that when these terms speak, they say she should be able to pursue her claims against Colvin and the former employees of the corporate defendants. Although Pullman may believe the settlement agreement's terms are self-explanatory, the differing interpretations of the parties require the Court to construe the agreement.

A second theme to Pullman's objections is that any agreement that releases individuals that do not release her is not a "mutual" release. Plaintiff's point is well-taken; but she may rest assured that she is not releasing anyone who does not release her. The settlement simply releases the *corporate defendants* from any liability the *corporate defendants* may otherwise have incurred based on the actions of Colvin and other former employees involved in the alleged fraud. In exchange, the corporate defendants release Plaintiff from any defamation claims or other claims they may have brought against her in relation to the events underlying and connected to her bringing this action. Plaintiff is not releasing Colvin, nor any other employee of the corporate defendants, in his individual capacity under the settlement.

Having addressed these overarching issues, the Court now proceeds to analyze Plaintiff's specific objections. They are a rehash of arguments that Magistrate Judge Netburn thoroughly reviewed and discussed in her R&R. These objections do not warrant *de novo* review. Plaintiff's objections that do warrant *de novo* review are explicitly noted below.

### 1. Enforcement of the Oral Agreement

Pullman states that, prior to reading the R&R, she was unaware that NYCPLR § 2104 suggests an oral settlement agreement in open court may not be enforceable, if it involves a *pro se* plaintiff. Pullman nonetheless persists in arguing her motion to enforce the oral agreement, so the Court does not read her statement as opposing enforcement of the agreement. In her R&R,

Magistrate Judge Netburn concluded that, notwithstanding NYCPLR § 2104, assessment of the *Winston* factors confirms the oral settlement agreement is enforceable, *see Winston v. Mediafare Entm't Corp.*, 777 F.2d 78 (2d Cir. 1986). The Court adopts this conclusion.

### 2. Inclusion of Former Employees in the Release

In the September 10 Settlement Conference, the parties agreed to the following:

> The settlement agreement will include a mutual release of all parties and all employees and agents, et cetera, and it will be a mutual release of all claims brought by all parties and releasing defendants from one another. So it will be a cross mutual release of all claims.

(Tr. at 5:22-6:1.) Magistrate Judge Netburn interpreted this agreement to release all claims against former as well as current employees of Alpha Media and Quadrangle. Plaintiff objects that she never intended to release former employees.

#### a. Ambiguity

Pullman objects to Magistrate Judge Netburn's interpreting the words "et cetera" to include former employees, since Pullman believes the term was not ambiguous and did not cover former employees. Magistrate Judge Netburn's interpretation of "et cetera" is justified not by the term's ambiguity, but rather from what was "plainly intended" and "the parties' reasonable expectations." *Gillman v. O'Connell*, 176 A.D.2d 305, 307 (2d Dep't 1991); R&R at 33. Furthermore, the word "all" in the phrase "mutual release of all parties and all employees" is the operative term, not "et cetera," and the word "all" in this phrase includes the employees of the corporate defendants at the time of the events underlying the action (i.e. former employees). Failure to release these former employees would not effectuate a mutual release, since it would allow Plaintiff to bring claims against the corporate defendants for vicarious liability based on

6

actions their former employees committed in their official capacities. [3]

### b. Use of Parol Evidence

Contrary to Plaintiff's objection, the R&R did not rely on any parol or extrinsic evidence in determining that former employees should be included. (R&R 32-35.)

### c. Boilerplate Language

Pullman objects to Magistrate Judge Netburn's description of her interpretation of the phrase "et cetera" as being "boilerplate." This description does not change the analysis of what the term means one way or another. Pullman's objection is unavailing.[4]

### d. Failure of "mutual" release

Plaintiff objects that a release of former employees cannot be mutual because the corporation does not have the ability to bind former employees, and thus Pullman would be releasing entities that are not releasing her. The Court has already addressed this argument above. The settlement releases only the corporate defendants from liability based on the actions of Colvin and other former employees involved in the alleged fraud; it does not release Colvin and other former employees in their individual capacities.[5]

---

[3] Plaintiff's objection that Magistrate Judge Netburn's cannot construe "et cetera" to include the corporate defendants' "current and former officers, directors, employees, agents, affiliates, predecessors, successors, assigns, insurers, and attorneys" since the term is not ambiguous is unavailing for the same reasons. Failing to include any of these categories of persons would not effectuate a mutual release.

[4] Plaintiff uses a definition of "boilerplate" which states "[b]oilerplate provisions should be consistent with the identified parties and take into account how these parties will interact or implement the relevant agreement." (Pl's Objections at 23.) Plaintiff's definition incorrectly quotes Black's Law Dictionary by attributing to the definition certain quotations from a law review article called *Boilerplate Provisions*. See Akash D. Sethi et al., *Boilerplate Provisions*, 4 Tex. J. Bus. L. 157, 158 (2012). More importantly, the definition Plaintiff employs hurts her argument. The reasonable expectation of a corporate party settling with an individual, interpreted in light of how the parties will "implement the agreement," would be a release including the categories of persons Magistrate Judge Netburn referenced (*see supra* note 3), since otherwise the corporate defendants could be left with outstanding liability.

[5] Magistrate Judge Netburn had already considered and rejected Plaintiff's objection on these grounds, explaining that a "mutual" release between an individual and a corporation reflects the status of each entity. (R&R at 33-34.)

### 3. Inclusion of Colvin in Release

Plaintiff's objection to the release including Colvin, the former Chief Executive Officer of Dennis Publishing Inc. (the predecessor to Alpha Media), fails for the same reasons that her objections to inclusion of former employees failed. Magistrate Judge Netburn dealt directly with Plaintiff's objection in concluding that it was the clear intent of the parties to include former officers and employees in the release (R&R at 33). The Court finds no clear error in this conclusion. Pullman objects that NY Gen. Oblig. § 15-108 required Colvin to be explicitly listed if he were in fact being released. But given the clear intent of the parties to release former employees in their official capacities, listing Colvin was unnecessary. *See Wells v. Shearson Lehman/American Express, Inc.*, 72 N.Y.2d 11, 19 (1988) (explaining that § 15-108 does not require a release to specifically name the discharged party if the expressed intent is clear, and the court should use ordinary contract principles to determine the intended scope of the release).

Again, the release does not apply to Colvin in his individual capacity. Pullman's concerns about this issue are without merit because this Court had already dismissed with prejudice all of Pullman's claims against Colvin in his individual capacity. (March 28, 2013 Order at 14.)[6]

### 4. Release of Claims That "Could Have Been Brought"

There are no objections to Magistrate Judge Netburn's conclusion that the parties agreed to a specific, not a general, release. There is no clear error in this conclusion, and the Court

---

Furthermore, in an October 3, 2013 conference, counsel for Alpha Media stated that she *does* have the authority to bind former employees in their official capacities. (*See* Oct. 3, 2013 Conference Tr. 11/16-19 (MS. PULLMAN: Are you binding Felix Dennis, Robert Bardner? Is Quadrangle binding Steve Rattener, Barry Pincus? MS. MELTON: In their capacity as former employees of Alpha Media? Yes.); *see also* Def.s' Reply Br. at 6.)

[6] This Court also subsequently denied Pullman's motion for reconsideration of that March 28 Order on November 6, 2013.

adopts it. Plaintiff does object, however, that Magistrate Judge Netburn made a "material change" to the settlement by interpreting it to include a release of "all claims that were brought or could have been brought" in connection with the action as of September 10, 2012. (R&R at 28-32.) Plaintiff argues that the negotiated release was only intended to include all claims actually brought by the parties. The Court reviews Plaintiff's objection *de novo*.

The transcript states: "The settlement agreement . . . will be a mutual release of *all claims brought by all parties* and releasing defendants from one another. So it will be a *cross mutual release of all claims*." (Sept. 10 Conference Trans. 5/22-61.) These two phrases, taken together, create ambiguity as to whether the release is for "all claims brought" or "all claims," including those that could have been brought. Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) (internal quotation marks omitted). Nonetheless, "[p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought." *Kass v. Kass*, 91 N.Y.2d 554, 566, 696 N.E.2d 174, 180-81 (1998) (internal quotation marks omitted).

It would be unreasonable to interpret the oral settlement agreement to allow Pullman to file a lawsuit based on the same incident with different claims. Defendants' intent in settling was to put to rest any potential claims relating to Pullman's purchase of the Maxim Bungalows timeshare. Agreeing to a release of only claims that were brought would leave Alpha Media and Quadrangle with the specter of outstanding liability, and would not fulfill Defendants' goal of

settlement.

Further, since Alpha Media and Quadrangle did not file any counterclaims, a mutual release would not be effectuated unless it applied to claims that could have been brought. Indeed, Plaintiff insisted on a mutual release so that she would be released from any potential defamation claims. (Oct. 3 Conference Trans. 9/7-25.) This would only be possible if the release included claims that *could have been* brought, since there were no claims against her at the time of settlement. *See Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 170 (2002) (noting that courts can consider extrinsic evidence to determine intent where there is ambiguity in the agreement).

### 5. Limitation of Confidentiality Agreement to Settlement Amount

Plaintiff argues that the confidentiality clause should not be limited to the settlement amount, notwithstanding that all other settlement terms were disclosed when the September 10 conference transcript was unsealed. The R&R addressed this issue (R&R at 36-37) and Plaintiff's objections are meritless. The confidentiality agreement cannot apply to the parts of the settlement agreement that have already been disclosed. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("The genie is out of the bottle . . . . We have not the means to put the genie back."). Contrary to Plaintiff's assertion that the "settlement amount [is] in the public domain," (Pl.'s Objections at 24), when the September 10 transcript was unsealed, the settlement amount was redacted (Order on Mot. to Seal at 18, Dkt. No. 207). The settlement amount is thus *not* in the public domain and is subject to the confidentiality provision.[7]

The parties do not object to the R&R's conclusion that the liquidated damages clause

---

[7] Plaintiff's objections to the use of parol or extrinsic evidence in determining the scope of the confidentiality agreement are similarly meritless, since Magistrate Judge Netburn did not rely on such evidence in the R&R. (R&R at 36-37.)

10

associated with the confidentiality provision applies equally to both parties. Finding no clear error in this conclusion, the Court adopts it.

### 6. Failure to Use October 29 Settlement Conference as Parol Evidence

Plaintiff argues that certain extrinsic evidence should be used to interpret the oral agreement. This runs counter to Plaintiff's objections that extrinsic evidence should not be consulted. Further, Plaintiff does not demonstrate how the October 29 Settlement Conference supports her interpretation of the contract. The Court therefore rejects this objection.

### 7. Failure to Distinguish Between Employees in Their Professional And Individual Capacities

Plaintiff objects that Magistrate Judge Netburn fails to distinguish between employees in their individual and professional capacities in the release. To the contrary, Magistrate Judge Netburn's Proposed Settlement Agreement explicitly states that Pullman is only releasing the individuals "in their capacity as Alpha Media Group Inc., Alpha Media Publishing Inc., and/or Quadrangle Group, LLC, officers, directors, employees, agents, affiliates, predecessors, successors, assigns, insurers and attorneys, respectively". (R&R Ex. A at 2-3.)

### 8. Explicit Exclusion of James Catledge and Derek Elliot from the Release

Plaintiff argues that James Catledge and Derek Elliot should not be explicitly named in the settlement agreement for purposes of excluding them from the release. There is no mention of Catledge or Elliot in the September 10, 2013 transcript and there is no evidence that it was the intent of the parties to have them specifically mentioned in the written agreement. Additionally, this language was added as an attempt to respond to Plaintiff's concerns. Plaintiff now asserts that she does not want the specific exclusion. The Court therefore removes the exclusion of James Catledge and Derek Elliot from the proposed settlement agreement. The Court notes,

11

however, that this removal does not mean that Catledge and Elliot are released by the terms of the settlement agreement. They are not.

### B. Defendants' Objection

Defendants object that, due to pending appeals Plaintiff has brought, the time within which Defendants must pay the settlement amount should be revised from within 45 days of the date of the order affirming the settlement agreement to within 45 days after "(i) the date of this order or (ii) the exhaustion of any appeals that Plaintiff may file, whichever date is later." (Defs.' Objections at 1-2.) The plain meaning of the terms recited at the September 10 conference are for payment to be made within 45 days of the execution of the written settlement agreement. (Sept. 10 Conference Transcript 4/4-6.) Therefore, Defendants' objection is unavailing. If Defendants find it necessary to stay enforcement of the judgment because an appeal is filed, they can file a motion at that time.

### CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff and Defendants executed an enforceable settlement agreement. The terms are those as stated in Ex. A to this Order. The parties' respective motions to enforce the settlement agreement are thus granted in part and denied in part. The Clerk of Court is directed to close this case.

Dated: New York, New York
September 10, 2014

SO ORDERED

PAUL A. CROTTY
United States District Judge

12